We are all honored to be here at the University of Washington Law School and we thank Dean Lawson for her hospitality and thank all the students for attending. We have several cases submitted on the briefs, but we won't discuss those. We'll discuss in the argument today only the cases to be argued. The first case to be argued today is United States v. Nomee. And that case is set for 10 minutes per side, so would the appellant proceed? Good afternoon. May it please the court. Van Arvanites, on behalf of Gary Nomee, or Paul Nomee, who appears, and I am here from Billings, Montana. As part of the Federal Defenders of Montana. The main issue here is whether the arrest was reasonable. And we believe the court erred in finding that it was reasonable. This warrant had Paul Gary Nomee on it. The dispatch was told that it was Paul Nomee III. And if you look at the video, there is about six or seven minutes in between where the officer first calls in Paul Nomee, waits a few minutes, calls in Paul Nomee again, and each time says Paul Nomee III. One of the warrants here had a birth date matching your client's birth date. Isn't that correct? I believe, yes. Exhibit D did have the birth date correct. So I suppose my question is why it wasn't reasonable for dispatch or for the officer to conclude that perhaps there had just been a typo and that the third had been left off. Why is that a problem under our precedence? Well, I think if you look at some of the cases that we briefed and the government has briefed, they are definitely distinguishable. In our case, unlike Hill, for example, unlike Shariff, for example, there was a lot of time that the dispatch had to check on this discrepancy. In the Ninth Circuit, we have the Riviera case, which I know you're familiar with, and that is also one of these mistaken arrests involving a shared name. And the court said that meets the Supreme Court standard of sufficient probability. And I think we all agree that sufficient probability, not certainty, is the standard. Why doesn't Riviera support the execution of the warrant? Well, if you look at – thank you very much, Judge McKeon – if you look at Riviera, the names were exactly the same. In our case, the names were not exactly the same. If you look at Riviera, the birth date was the same. And there were additional descriptors, additional descriptors, which I would submit makes that warrant a lot more reasonable than our warrant that had a wrong name and a correct or a wrong birth date. Well, a wrong birth date on one. On one. Yeah, so that's pretty significant that you only need maybe one warrant, and one of those matched the birth date. What's an officer to do? Well, in this situation, there was a lot of time. The dispatch had a lot of time. Paul Garinomi was known in the community, had priors, had issues with law enforcement before. This is a very small community. It would have taken a minute to just check the records and realize that the name was wrong, the address was incorrect.  There were no descriptors. Yes, Judge. Sorry to interrupt, but why isn't this just a reasonable mistake made by the police in good faith? Well, I think if you look back at that doctrine, I think the impetus behind that doctrine is to ensure that law enforcement doesn't make these kind of mistakes, because a Fourth Amendment mistake can be huge to a person. It deprives them of their freedom. And so I think if you look at the facts of this case compared to, say, Riviera, compared to Hill, compared to Sheriff, we have, even Evans for that matter, we have a whole different situation. We have a smaller community. Remember, in Hill and in Sheriff, there were other exigent circumstances that created reasonableness for that warrant. It was 3 in the morning. You've referenced two things that are of interest to me. One, small community, and second, time lag. Can you explain how those weighed in here? I'm a little perplexed on the small community aspect. Because not everybody knows everybody, even in the small community. Well, I think I would first talk about the timeline, because I think the timeline is important. You even have in the video, in the watchguard video, the police officer, before the dispatch gets back to him, even says to himself, and we hear it loud and clear, well, I could have gone down and done this quicker than waiting for this person to do whatever they're doing in the dispatch office. And so that should give one pause, because there was an extreme amount of time to be able to just look, and look at the other warrant. Look at the descriptors. So is your point there that the time lag at the dispatch office, is the argument that that should have alerted the officer that relying upon what dispatch then would say would not be reasonable? Is that what you're getting at? I just want to understand. I think it goes to the dispatch person, who is, as Sharif tells us, and I know it's a sister circuit, obviously, but that dispatch is part of the law enforcement team. You know, I don't know what the issue was, why dispatch did what they did, took so long, but they had two or three different opportunities to get this right. Remember, the law enforcement officer first calls it in, Paul Nomi III. He waits. No response. Again, says Paul Nomi III. The dispatch says, we have a, there is a Paul Nomi. He goes back to double check. Why does he do that? Because he's not sure. He goes back. He gets his license. His license has the physical characteristics that you had in Hill and in Sharif. You had the physical characteristics, even in Rivera. You know, that was the third prong. Look at Hill as well. It had an alias as William and Willie. Very similar, obviously, to William, the person who was wrongfully arrested, instead of Wilbur. I have some more questions, but I notice your time is running, so I didn't know. I'd like to reserve the rest. Thank you very much. Thanks, Counsel. Okay, so we'll hear from. Good morning. Lori Sook for the United States. Because the analysis of whether a mistaken arrest is a valid arrest rests on sufficient probability, not certainty, analyzed by whether the officer's mistake was understandable, and whether the circumstances, the arrest, the conduct of the officer was reasonable. Here we have to look at what Officer Anthony and what the dispatcher did. And to put this to bed, the United States does agree that, unlike the Arizona versus Evans situation of a court clerk, a dispatcher could easily be part of the prosecution team and should be analyzed. That's not something this circuit has had to address, but certainly we have no quarrel with the Tenth Circuit's view there. So what you have to look at is what they encountered together, the officer and the dispatcher. They encountered Paul Nomi III, and the dispatcher found a warrant for Paul Nomi, but back up. Small community, yes. Officer Anthony knew. He knew there was a warrant for a Paul Nomi, or thought that there was. So certainly, names are known, whether he, obviously he didn't know him, but he knew the name. So the dispatcher confirmed, yes, a warrant for Paul Nomi. It's not that Officer Anthony questioned that information, but he, again, went one step further trying to confirm more. Got the driver's license, got the date of birth, and that was confirmed for him as well. So really the question here for the court is, does this situation fall outside of Hill versus California and all of the cases that have followed? Well, what here is the significance of the non-matching middle name, the non-matching the third, which Paul Nomi III has on his name, and the discrepancy on at least one of the warrants of the birth date? It seems like maybe those are three things now that should be telling everybody this is not the right guy. So the driver's license didn't have a middle name. So even though the warrants did have a middle name, can you really count that as a mistake? Not all driver's licenses have your middle name, but there was that difference. The third, okay, so how many times are suffixes dropped off of documents? Third, junior, senior. Certainly, these are things to consider, Judge Thomas, but then again, there are always mistakes. Otherwise, it wouldn't be a mistake and arrest. Well, I guess my question is, how many mistakes do you have to have before it's no longer reasonable? And here you've got maybe three. Well, I don't know that we have really very many, if any at all, because what we have is the first and last name matching and the date of birth matching on at least one warrant. But that's a red flag, isn't it, that we now have a warrant with a different birth date? Except that polynomial the third, turning the defense's argument backwards, they say that should mean that it really isn't as compelling, but you automatically know that there's more than one polynomial, which would tell you there's another date of birth. So you still have a warrant with the correct first and last name and the date of birth. And it would be understandable, then, that you'd have another with a different date of birth. Do you need both warrants? You don't need both warrants. And here, really, if you look at Officer Anthony's report that's in the record, the dispatcher and Officer Anthony were looking at the first warrant for a number of reasons because that's where all of the crimes that they talked about. There's really no evidence that they looked at the second warrant. But making the defense argument for them, I think, they conclude that because that, again, is something probably the dispatcher could have discovered. And then you have that different date of birth, and then you can consider that as well. But does that pull it outside of the realm of reasonableness? And the United States doesn't believe that it does. No further questions? I'll sit down. None for me. Thank you. Thank you. Are there any questions? Well, I want to just follow up on the question that I asked the government. If you had one warrant with a birth date that matched and a name that matched, would you need anything else? In this case, the name didn't match exactly, obviously, as we know. And just a few more cursory checks by the dispatch would have alerted both the dispatch and Officer Anthony that we're talking about two different people. Also, we have an address that was, you know, the Officer Anthony had his license, which has his descriptors and address on it. There is even something else. There is a tattoo mark on Paul Nomi III's thumb that could have been an added descriptor because there was some question, some doubt as to whether this was the right person. And you also have, on top of that, Paul Nomi III saying to him, this isn't, you know, this isn't me. And in Hill, that same thing happened, but there were other issues. There was the gun that was in plain view where in Hill they said, oh, you know, this person isn't being honest. There's questions about how he got in the apartment. We didn't have any of that here. And so I ask the court to reverse the district court. Thank you very much for your time. Thank you, counsel. This case shall be submitted.
judges: McKEOWN, GOULD, THOMAS